**Law Offices of Avrum J. Rosen, PLLC**  *Attorneys for David J. Doyaga, Sr., Plaintiff-Trustee*  
38 New Street  
Huntington, New York 11743  
(631) 423-8527  
Avrum J. Rosen, Esq.  
Alex E. Tsionis, Esq.

**Hearing Date: May 4, 2021**  
**Hearing Time: 10:30 a.m.**  
**Objection Deadline: April 27, 2021**

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
-------------------------------------------------------------x

In re:

REDF EQUITIES, LLC,

                              Debtor.

-------------------------------------------------------------x

DAVID J. DOYAGA, SR. as Trustee of the  
Estate of REDF EQUITIES, LLC,

                              Plaintiff,

    -against-

DAVID AUGENSTEIN,

                              Defendant.

-------------------------------------------------------------x

Chapter 7

Case No.: 19-46820-ess

Adv. Pro. No.: 21-01008-ess

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ENTRY OF JUDGMENT UPON DEFAULT

David J. Doyaga, Sr., as Chapter 7 Trustee (the "Plaintiff") of the Estate of Redf Equities, LLC (the "Debtor"), by and through his counsel, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for his Memorandum of Law offered in support of the Plaintiff's application (the "Application") seeking the entry of a judgment upon default against the above-captioned defendant, David Augenstein (the "Defendant"), and states as follows:

## THE COMPLAINT

1. The Plaintiff commenced the instant adversary proceeding by a complaint dated January 21, 2021 (the "Complaint") against the Defendant.

2. The Complaint seeks to, among other things, recover (i) the amount of not less than $130,000.00 (the "Damages") under (a) Sections 105, 323, 502, 541, 542, 544, 548 and 550 of Title 11, United States Code (the "Bankruptcy Code"); (b) Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (c) Sections 273, 274, 275, 276, and 276-a of the New York Debtor and Creditor Law (the "DCL"); and (ii) attorneys' fees and costs. The allegations set forth in the Complaint are all incorporated herein by reference.

3. The procedural issues associated with an application for the entry of judgment upon default, pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "Federal Rules") made applicable hereto pursuant to Rule 7055 of the Bankruptcy Rules are set forth in the accompanying affidavit of Plaintiff-Trustee David J. Doyaga, Sr., Esq., and are likewise incorporated herein by reference.

4. The Complaint alleged, among other things, that the Debtor fraudulently conveyed the amount of $130,000.00 to the Defendant, for no consideration, within the six (6) year reach-back period and which fraudulent conveyance is property of the Debtor's estate (the "Fraudulent Transfer"). Specifically, the Complaint alleged that the Debtor repaid the Defendant at least $130,000.00 more than the Debtor was obligated to pay causing the Defendant to receive at least a $130,000.00 windfall. In his Complaint, the Plaintiff also alleged that at the time of the Fraudulent Transfer, the Debtor was insolvent, or the Fraudulent Transfer rendered the Debtor insolvent, the Debtor was indebted to creditors, the Debtor was not paying its obligations as they

became due and owning and the Fraudulent Transfer was made with the actual intent to hinder, delay, or defraud the Debtor's creditors.

5. The Debtor's involuntary bankruptcy petition was filed on November 13, 2019 and, on March 13, 2020, the Court entered an Order for Relief. The Fraudulent Transfer complained of was made on or about May 18, 2018, within two (2) years of the Order for Relief. As such, the Fraudulent Transfer is clearly within the six (6) year reach-back period under the DCL and the two (2) year reach-back period under the Bankruptcy Code.

## STANDARD TO GRANT JUDGMENT UPON DEFAULT

6. Entry of judgment by default is governed by Rule 55 of the Federal Rules, made applicable here by Rule 7055 of the Bankruptcy Rules. "Although the Debtor has failed to plead, a motion for judgment by default is not granted as a matter of right. Rather, the court in its discretion may conduct a hearing 'requiring some proof [from the Plaintiff] of the facts that must be established in order to determine [the Debtor's] liability.'" *Citibank USA, N.A. v. Spring*, 2005 Bankr. LEXIS 319 (Bankr. D. Conn. 2005) (internal citations omitted), *see also Euron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("As a general rule a . . . court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro se*").

7. Further, a plaintiff must demonstrate a *prima facie* case by competent evidence in order to obtain a default judgment. *Citibank USA, N.A.* Bankr. LEXIS 319, at *6. A plaintiff has made a satisfactory *prima facie* showing where, from the evidence presented, a factfinder could reasonably find every element that the plaintiff must ultimately prove to prevail in the action. *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997) (*en banc*).

8.	In the instant case, the Plaintiff submits that the evidence presented sufficiently establishes the Plaintiff's *prima facie* case against the Defendant and is therefore entitled to the entry of judgment upon the Defendant's default.

## THIS COURT SHOULD ACCEPT ALL ALLEGATIONS
## OF PLAINTIFF'S COMPLAINT AS TRUE

9.	Initially, it must be noted that for purposes of this Application, this Court should accept as true all allegations of the Plaintiff's Complaint based upon the Defendant's default in interposing opposition thereto. Case law is replete with binding authority that where a defendant is in default, a court must construe the averments in the complaint as true for purposes of a default motion. The Second Circuit in *"R" Best Produce, Inc. v. DiSaprio*, 540 F.3d 115 (2d Cir. 2008), although it vacated default judgment based upon jurisdictional impediments, held "the allegations of a complaint are deemed admitted for adjudication of the *merits* when a default judgment is entered by a court with jurisdiction." *"R" Best Produce, Inc. v. DiSaprio*, 540 F.3d 115, 125 (2d Cir. 2008).

10.	Similarly, the Second Circuit in *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1309 (2d Cir. 1996), affirmed the District Court, and Judge Hall in the Bankruptcy Court, holding that it was proper that "all the allegations of fact in plaintiff's said adversary complaint [were] deemed admitted and resolved in favor of plaintiff" related to plaintiff's motion for default judgment. "Upon a default, the court generally must take the well-pleaded allegations of a complaint as true." *In re Drexler Associates, Inc.*, 57 B.R. 312, 315 (Bankr. S.D.N.Y. 1986). "Well pleaded allegations of the petition, including jurisdictional averments, are taken as admitted on a default judgment." *In re Rebeor*, 93 B.R. 16, 21 (Bankr. N.D.N.Y. 1988).

11. In *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971), the Second Circuit was presented the issue of where a defendant had apparently intentionally defaulted upon his obligation to answer or oppose a complaint and was seeking to collaterally attack the default judgment. The *Hughes* Court first noted the appropriateness of deeming allegations in a complaint as true upon default, holding "by its default [defendant] admitted every 'well pleaded allegation' of the complaint, a term of art which [the District Court Judge] interpreted to permit finding an allegation not to be 'well pleaded' only in 'very narrow, exceptional circumstances." *Id*. at 63. The *Hughes* Court went on to examine the "venerable but still definitive case, *Thompson v. Wooster*, 114 U.S. 104 (1885)" for authority for its conclusion that factual allegations in a complaint should be taken as true for purposes of default. The *Hughes* Court noted:

> The applicable principles [allegations in complaint are taken as true] are clearly implied from Thomson v. Wooster, supra, where the court held that defendants who had defaulted in a patent infringement suit would not be permitted to show that the patent sued upon was invalid. Defendants had sought to introduce the original patent to show it differed from a reissued patent, which was the patent the plaintiffs sought to enforce. The court ruled that neither this proof nor evidence that defendants had delayed 14 years in seeking reissue were sufficient to defeat the contrary allegation of the validity of the patent contained in the complaint because, inter alia, the delay "might possibly have been explained, and the court could not say as a matter of law, it was insusceptible of explanation. . . ." We are instructed by Wooster that so long as the facts as painted by the complaint "might . . . have been the case" they may not now be successfully controverted by [Defendant]. There was a time for that and [Defendant] cannot elect to default and then defend on the merits. It cannot have its cake and eat it too.

*Id*. at 64.

12. Accordingly, as set forth above, the Plaintiff respectfully submits that this Court should accept as true the factual averments as detailed in the Complaint as the Defendant failed to

interpose any opposition thereto. At the Court's Pretrial Conference held on March 30, 2021, the Plaintiff's counsel indicated that the Defendant has failed to answer, move or otherwise appear in this adversary proceeding, and respectfully requested this Court to note the Defendant's default. The Supreme Court and the Second Circuit have both spoken on this issue, thus this Court is well within its authority to accept the Plaintiff's facts in the Complaint as true for default purposes without the necessity of an inquest. The Plaintiff shall detail with specificity below why this Court should enter judgment as against the Defendant on account of the Fraudulent Transfer.

## **LEGAL STANDARDS FOR AVOIDING FRADULENT TRANSFERS**

13.     Sections 544 and 550 of the Bankruptcy Code and Sections 273, 274, 275 and 276 of the DCL, include within the scope of the transactions subject to avoidance of the Fraudulent Transfer made by the Debtor to the Defendant. The Complaint sounds in constructive fraud under DCL Sections 273, 274, 275 and 276 and Sections 544 and 550 of the Bankruptcy Code. As will be demonstrated below, the Complaint, which seeks avoidance and recovery of a Fraudulent Transfer in the amount of $130,000.00, alleges sufficient specific facts to sustain claims under DCL Sections 273, 274, 275 and 276 and Sections 544 and 550 of the Bankruptcy Code, as well as sufficient specific facts to justify this Court granting to the Plaintiff judgment upon default.

14.     Section 273 of the DCL provides, in relevant part, that "every conveyance made … by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made … without fair consideration." NYDCL § 273.

15.     Section 274 of the DCL provides, "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably

small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent." NYDCL § 274.

16. Section 275 of the DCL provides in relevant part, that "every conveyance made … without fair consideration when the person making the conveyance … intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." NYDCL § 275.

17. "Fair Consideration" is defined in Section 272 of the DCL:

> Fair consideration is given for property, or obligation, (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

NYDCL § 272.

18. Courts, in examining the requirements of Section 272 of the DCL, have consistently held that "fair consideration has two components – the exchange of fair value and good faith – and both are required." *SEC v. Universal Express, Inc.*, 2008 U.S. Dist. Lexis 35342, *5 (S.D.N.Y. 2008). "[T]he recipient of the debtor's property provides fair consideration by either conveying property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of the property received or discharged." *Silverman v. Actrade Capital Inc. (In re Actrade Financial Techs., LTD)*, 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005). It has been held that "fair consideration" of NYDCL and "reasonably equivalent value" under the Bankruptcy Code "have the same fundamental meaning … and are interpreted similarly by the courts." *Balber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 667 (Bankr. S.D.N.Y. 2000).

7

19. Section 276 of the DCL provides in relevant part, that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL § 276.

20. Bankruptcy Code Section 544 provides that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title.
>
> (2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548 (d)(3)) that is not covered under section 548 (a)(1)(B), by reason of section 548 (a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a

8

> Federal or State court shall be preempted by the commencement of the case.

11 U.S.C. § 544.

21. Bankruptcy Code Section 550 provides that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

22. Case law is clear in rejecting any type of alleged consideration which did not demonstrably confer a tangible economic benefit on the Debtor in fraudulent conveyance analyses. The Court of Appeals for the Second Circuit ruled in *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991-92 (2d Cir.1981) that "if the benefit of the transaction to the debtor does not substantially offset its cost to [the debtor], then his creditors have suffered, and . . . the transaction was not supported by 'fair' consideration." *See also, e.g., Kramer v. Sooklall (In re Singh)*, 434 B.R. 298 (Bankr. E.D.N.Y. 2010); *375 Park Avenue Assoc., Inc.*, 182 B.R. 690, 697 (Bankr. S.D.N.Y.1995); *Musso v. Herman (In re Testmetges)*, 85 B.R. 683 (Bankr. E.D.N.Y. 1988). The Defendant, having failed to interpose an answer, cannot refute the Plaintiff's allegations.

23. Moreover, this Court undertook a lengthy analysis of the recovery of a fraudulent conveyance under Chapter 5 of the Bankruptcy Code and the DCL in *Kramer v. Mahia*, 2014 Bank. Lexis 4205, *28-9 (Bankr. E.D.N.Y. 2014), wherein this Court described the elements necessary to recovery, holding:

> To prevail on these claims and avoid the Mortgage Proceeds Transfer as constructively fraudulent under NY DCL Sections 273, 274, or 275, the Trustee must show that the Debtor's property was transferred, that the transfer was made without fair consideration, and that either: the transferor [was] insolvent or [would] be rendered insolvent by the transfer in question, NY DCL § 273 . . . the transferor [was] engaged in or [was] about to engage in a business transaction for which its remaining property constitute[d] unreasonably small capital, NY DCL § 274; or . . . the transferor believe[d] that it [would] incur debt beyond its ability to pay, NY DCL § 275. *Sharp*, 403 F.3d at 53. And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of her claims.

24. Thus, the Plaintiff herein must establish the following elements: (1) that the Fraudulent Transfer was a transfer of the Debtor's property; (2) that the Fraudulent Transfer was made for less than fair consideration or reasonably equivalent value; and (3) that the Debtor was insolvent when the Fraudulent Transfer was made or rendered insolvent by the Fraudulent Transfer. The Plaintiff respectfully submits that he more than meets these burdens and this Court should grant judgment upon default as against the Defendant.

25. Addressing the first element, that the Fraudulent Transfer was from property of the estate, Section 541(a) of the Bankruptcy Code sets forth that a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." By its very definition, property of the estate under Bankruptcy Code Section 541 was intended to be extremely broad. That wide net, however, is not necessary herein, as the funds sought to be recovered come demonstrably from the Debtor. Here, the uncontested facts demonstrate that the Fraudulent Transfer was made directly from the Debtor to the Defendant. (Compl. ¶¶ 1, 2, 36, 38, 50, 52 and 54.) Therefore, the Fraudulent Transfer was property of the estate. As a consequence, the Plaintiff has the right to recover from the Defendant the entirety of the Fraudulent Transfer, which was

made by the Debtor to the Defendant. Again, the Defendant's failure to interpose an answer renders the facts alleged in the Complaint without rebuttal.

26. Turning next to the second element, that the Fraudulent Transfer was made for less than fair consideration or reasonably equivalent value, this is certainly satisfied as well. The Complaint alleges that the Debtor received no consideration or less than fair consideration or reasonably equivalent value for the Fraudulent Transfer. (Compl. ¶¶ 1, 47, 59, 74, 81, and 88.) Therefore, and since the Defendant failed to file an answer to the Complaint rendering the allegations unrebutted, the Plaintiff has clearly also satisfied the second element.

27. Finally, addressing the third element, that the Debtor was insolvent when the Fraudulent Transfer was made, or rendered insolvent thereby, the Plaintiff respectfully submits he has satisfied this final condition as well. (Compl. ¶¶ 1, 46, 60 and 73.)

28. On October 21, 2020, Patch of Land Lending, LLC ("POL"), a creditor in the underlying bankruptcy case, filed a motion for relief from the automatic stay [Bankr. Dkt. No. 63] (the "Lift Stay Motion"). Annexed to the Lift Stay Motion as Exhibit "D" is an Affidavit from Gina Donatoni, a Chief Operating Officer of POL, which is sworn to under oath (the "Donatoni Affidavit"). According to the Donatoni Affidavit, on May 18, 2018, at the time of the Fraudulent Transfer, the Debtor executed a note (the "POL Note") in the principal amount of $430,000.00. A copy of the POL Note and the Donatoni Affidavit are annexed to the Lift-Stay Motion as Exhibits "A" and "D" respectively.

29. Further, a review of the claims filed against the Debtor's estate, indicates the following: (i) Jermone Williams, the petitioning creditor (the "Petition Creditor"), filed a proof of claim (Claim No. 1) in the total amount of $480,058.40, which was incurred during the zone of

11

insolvency[1]; and (ii) the NYC Water Board filed a proof of claim (Claim No. 2) in the total amount of $10,791.63, which was incurred during the zone of insolvency.

30. A review of the Debtor's Schedule "A/B" [Bankr. Dkt. No. 9], which was filed by the Petitioning Creditor[2], evidences that as of the Petition Date, the total of all of the Debtor's assets are in the amount $713,000.00[3]. A review of the Lift-Stay Motion evidences that the total indebtedness owed to POL as of the Petition Date is $485,090.87. *See* Lift-Stay Motion, Exhibit D, Dkt. No. 63-5. Further, a review of the Claims Register shows that as of the Petition Date, the Debtor had claims in the amount of $490,850.03. As a result, as of the Petition Date, the Debtor had liabilities in the total amount of $975,940.90. Therefore, the Debtor's liabilities greatly exceed the Debtor's assets and thus, the Debtor is clearly insolvent.

31. The Second Circuit in *Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934), held:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

When an insolvency presumption arises, the burden shifts to the defendant to come forward with proof of the debtor's solvency. *See Ackerman v. Ventimiglia* (*In re Ventimiglia*), 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007). When "the trustee meets his burden as to lack of fair consideration . . .

---

[1] On February 16, 2017, prior to the Fraudulent Transfer date, the Petitioning Creditor commenced a civil action against the Debtor captioned as *Jerome Williams v. Redf Equities, LLC, Tomer Dafna, Iskyo Aronov, David Augenstein, and Herman Meisels*, in the Supreme Court of the State of New York, Kings County, Index Number 503186/2017.

[2] According to the Order for Relief, the Debtor was directed to file schedules by April 1, 2020. The Debtor failed to comply with the Court's order and the Petitioning Creditor filed schedules on behalf of the Debtor.

[3] The Trustee believes that the Petitioning Creditor overvalued the Debtor's real property. According to an appraisal dated April 10, 2018 – just 38 days prior to the Fraudulent Transfer – the Debtor's real property, and the only asset disclosed, was worth $620,000.00. *See* Bankr. Dkt. No. 63-6, Exhibit "E". In addition, on July 7, 2020, the Plaintiff obtained an informal valuation of the Debtor's real property by his real estate broker/auctioneer, MYC & Associates, Inc. ("MYC"). According to MYC, the real property had a value in 2020 between $575,000.00 and $600,000.00.

it is presumed that the transfer made the debtor insolvent." *Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005).

32. This Court, in *Mahia*, addressed the insolvency analysis as well, setting forth that:

> For purposes of *NY DCL Section 273*, "insolvency" is defined as "when the present fair salable value of [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *NY DCL § 271(1)*. And the Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." *11 U.S.C. § 101(32)*. "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." *Universal Church v. Geltzer, 463 F.3d 218, 226 (2d Cir. 2006)*.

*Mahia*, 2014 Bankr. Lexis 4205, *39-40. Once insolvency is established by a plaintiff, as a result, the burden shifts to a defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudical Academy Torah Vyirah, Inc.*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011). This Court, in holding that the plaintiff had in fact established insolvency and the defendant had not adequately challenged such fact, held:

> Defendant did not present evidence sufficient to show the Debtor's solvency, and argues, in substance, that the Debtor was not insolvent when she made the Mortgage Proceeds Transfer. The Defendant also argues that the Debtor's solvency at the time of the Mortgage Proceeds Transfer will be shown at trial. This is not sufficient to show that there is a genuine dispute as to a material fact that the Debtor was insolvent at the time of the Mortgage Proceeds Transfer or was rendered insolvent by that transfer.

*Mahia*, 2014 Bankr. Lexis 4205, *41-2.

33. The Plaintiff submits that, the Debtor, prior to the Petition Date, engaged in numerous financial transactions and had substantial unpaid obligations during the period in which the Debtor made the Fraudulent Transfer to the Defendant. In fact, based upon the proofs of claim filed against the Debtor's estate, it is clear that the Debtor was not paying its obligations as they

became due. This is especially true based upon the amount due and owing to the Petitioning Creditor, who had an unliquidated debt that precedes the date of the Fraudulent Transfer. Thus, the debts owed to creditors existed well in advance of the date of the Fraudulent Transfer.

34. Accordingly, based upon the amount of debt incurred by the Debtor and the paucity of actual assets, the Plaintiff submits that there is no question of fact that the Debtor was in fact and in law, insolvent on the date that the Fraudulent Transfer was made to the Defendant. Again, as the Defendant has failed to interpose an answer to the Complaint, the allegations of insolvency have gone without rebuttal. The Plaintiff submits that he has made out a *prima facie* case demonstrating the Debtor's insolvency.

### THE DEFENDANT IS NOT IN ACTIVE MILITARY SERVICE

35. In any civil action or proceeding in which the defendant does not make an appearance, the court or administrative tribunal, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit stating whether or not the defendant is in military service and show necessary facts to support the affidavit. Specifically, Section 201(b)(1) of the Soldiers' and Sailors' Civil Relief Act ("SSCRA") sets forth, among other things, that: In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit-- (A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit.

36. Courts are understandably loathe to grant judgment by default upon a defendant who is on active military duty, and thus protecting the freedoms of this country and its citizens. In *In re Templehoff*, 339 B.R. 49, 53 (Bankr. S.D.N.Y. 2005). Chief Judge Morris, on an order to show cause related to a Bankruptcy Code Section 362 motion and default request, noted "[t]his Court takes its responsibility to protect the rights of these men and women pursuant to SSCRA

seriously. Our country's servicemembers must have peace of mind that they will not be subject to civil actions which they cannot appear and defend." The Second Circuit, in *U.S. v. Kaufman*, 453 F.2d 306, 309 (2d Cir. 1971), similarly held that "[t]he purpose of the Soldiers' and Sailors' Civil Relief Action is to prevent default judgments from being entered against members of the armed services in circumstances where they might be unable to appear and defend themselves."

37.     Here, this Court is not prohibited under the restrictions of the SSCRA to enter default judgment against the Defendant, as the Defendant is not on active military duty, as described below.

38.     Plaintiff's counsel accessed the online website of the Defense Manpower Data Center ("DMDC"), which serves under the Office of the Secretary of Defense, and is responsible for collating personnel, manpower, training, financial, and other data for the Department of Defense. Specifically, the DMDC makes available information as to an individual's active military duty status, which is publicly available at https://scra.dmdc.osd.mil.

39.     On April 7, 2021, Plaintiff's counsel accessed the DMDC website identified above and provided the Defendant's name and birthdate to determine if he is on active-duty status or not. According to the DMDC, the Defendant is not on active-duty status. Thus, Section 201(b)(1) of the SSCRA is not applicable or offended here, and default judgment may be issued by this Court as against the Defendant and in favor of the Plaintiff.

## CONCLUSION

40.     The Plaintiff submits that based upon (i) the Fraudulent Transfer, as alleged in the Complaint, was property of the Debtor's estate; (ii) the Fraudulent Transfer was made for less than fair consideration or reasonably equivalent value; (iii) the Fraudulent Transfer was made by the Debtor at a time when the Debtor was insolvent or the Fraudulent Transfer having rendered the

Debtor insolvent; and (iv) the Fraudulent Transfer to the Defendant was made within six (6) years prior to the Petition Date, the Plaintiff is accordingly entitled to a judgment upon the Defendant's default.

Dated: April 7, 2021  
       Huntington, New York

Respectfully submitted,

**Law Offices of**  
**Avrum J. Rosen, PLLC**  
*Counsel to David J. Doyaga, Sr. as*  
*Chapter 7 Trustee of the Estate*  
*of Redf Equities, LLC*

By:   <u>*/s/ Avrum J. Rosen*</u>  
      Avrum J. Rosen, Esq.  
      Alex E. Tsionis, Esq.  
      38 New Street  
      Huntington, New York 11743  
      (631) 423-8527  
      arosen@ajrlawny.com  
      atsionis@ajrlawny.com